ROBERTS *v.* THE STATE.

1. In order for a defendant in a criminal case to take the benefit of the act of September 27th, 1883, touching the production of convicts in the penitentiary, as witnesses, application must first be made to the governor as the act prescribes. The observance of that requirement is necessary, and its omission is more than failure in a mere technicality.

2. If section 4027 of the code applies where the person desired as a witness is imprisoned as a convict in the penitentiary, it imposes no absolute duty on the judge of the superior court to direct or require that the order for producing the convict shall be executed

at the expense of the public, even though the applicant for the order be unable from his poverty to defray the expense, and even if the judge in the exercise of his discretion might, if he thought proper, make the county chargeable therewith. The constitutional right to have compulsory process for witnesses does not include any right of having them brought into court at public expense; and no such right has been expressly conferred by statute, except by the act of 1883 above referred to, under which the right is not unconditional, but limited by the sound discretion of the judge, to be exercised on the special facts of the case.

3. The application in the present case being made under the code, and the judge not having denied the order or process applied for, but having only declined to have it executed at the charge of the county, there was no error.

4. There was no abuse of discretion in denying a new trial on any of the grounds of the motion.

April 16, 1894.

Indictment for larceny from the person. Before Judge Richard H. Clark. Fulton superior court. September term, 1893.

Roberts was convicted of larceny of money from the person of John Wade. The indictment charged that the crime was committed with one O'Shields who had been tried and finally convicted.

When the case was called for trial, defendant moved for a continuance on account of the absence of two witnesses, William B. Hall and Porter Stocks, who were in the State penitentiary from the same court. When defendant was put on notice that the case would be called for trial, he presented to the court a petition for an order allowing them to be brought into court to be sworn in his behalf; and he alleges that the court erred in refusing to grant the same. This petition alleged, in brief: Defendant will need the testimony of Hall. He expects to prove by Hall, that Hall is the man who robbed Wade, and defendant not the man, and it was impossible for it to be defendant; that on the night defendant was charged with the larceny Hall robbed Wade; that on that night, December 24, 1892, about

9:30 o'clock, Hall went on Collins street, Atlanta, and met a man who was very drunk and did not know where he was; that he had a bundle and Hall took it from him and unrolled it, but found it was nothing but some old overalls; that Hall took him by the arm and started to walk towards Decatur street; that Wade gave Hall a dollar and insisted on his getting some whisky; that the bar-rooms were closed, and he gave Wade a drink out of a bottle Hall had in his pocket, and kept the dollar; that Wade was beastly drunk, and he caught hold of Wade and kept him from falling; that Wade pulled a large pocket-book out of his hip pocket and then tried to put it back, saying he had plenty of money; that Hall got the money from Wade before he got it back in his pocket, and Wade was so drunk he did not know what he was doing; that they came up Decatur street to Loyd and separated, etc.; and that he afterwards heard of two men being arrested for robbing a man on Decatur street, and on the same night he robbed a man and knew they were charged of the same crime he had committed. Defendant can prove by Porter Stocks, that on O'Shields' return to the jail, after testifying on the last trial of defendant, O'Shields stated to Stocks that he had sworn falsely against defendant and that defendant was not guilty, but that O'Shields did so because he thought it would be an advantage to him in the case in which he had been convicted. Defendant has been confined in jail about nine months, and has therefore not had an opportunity for making and accumulating money; he has no property, and is in no way able to pay the expenses of bringing these witnesses to and from the penitentiary. He prays for an order directing the sheriff to go to the penitentiary and bring them into court as witnesses.—The judge declined to grant the order prayed for, because O'Shields had escaped from jail and could not be found, and Stocks'

evidence was only to discredit O'Shields; and because Hall, commonly called "Skinny Hall," was officially known to the judge, who had presided in his trial and sentenced him to the penitentiary for several offences, in which trials he confessed to his guilt in one or more cases where the evidence demonstrated his confession was to relieve the other defendants, he having been already convicted. He was in such condition no jury would believe him. To bring him to court would be difficult and expensive, and would give him an opportunity to escape. Knowing the utter uselessness of his evidence, the judge felt it his duty not to put the expense of such a proceeding upon the county; but if the county or State could be relieved of the expense, would order him brought.

The motion for new trial contained also the general grounds, and a ground of newly discovered evidence. The evidence at the trial showed, that on the evening of December 24, 1892, Wade, having in his hip-pocket a pocket-book containing over $200 in bills, took several drinks of liquor and visited a house of ill fame. While there defendant and O'Shields came in; and not long afterwards, these three left the house and walked up the street together, hunting a place to get more drink. Defendant offered to go and get liquor if Wade would give him money to pay for it. Wade did so, and defendant went off and in a few minutes returned, and Wade drank from the bottle he brought. Just before this he still had his pocket-book. After so drinking he recollected no more until the next morning, when he found himself far removed from the place where he was on the previous night, his pocket-book and money gone. One Lanier testified that he saw defendant and O'Shields with Wade, who was staggering. He heard defendant say, "Where is that bottle?" and saw him fumble around and pull a pocket-book from Wade's pocket;

whereupon defendant and O'Shields went through an alley, leaving Wade there staggering. One Hall testified, that in the jail and in the presence of Porter Stocks, defendant said he was guilty of the crime and O'Shields had nothing to do with it; that he (defendant) was a thief, but was too slick to get caught, etc. Defendant introduced no evidence at the trial. · To support his ground of newly discovered evidence, he produced an affidavit by one Griggs, that he was at the same house with Wade on the night in question; that he left about the same time Wade left, went up the same street, met defendant and remained with him until midnight, but saw no more of Wade. He did not communicate these facts to defendant or his counsel until after the trial. Also, an affidavit of one Camp, that he heard Hall say he got Lanier to swear as he did. Also, affidavit of Porter Stocks, contradicting Hall's testimony. There was an affidavit by defendant as to his ignorance of the newly discovered evidence until after the trial; but no affidavit by his counsel, so far as the record discloses.

HULSEY & BATEMAN, for plaintiff in error.
C. D. HILL, solicitor-general, *contra*.

SIMMONS, Justice.

1. Roberts was indicted for the offence of robbery. When he was arraigned for trial he moved for a continuance on the ground of the absence of two witnesses, Hall and Stocks. The court refused to continue the case, and this is one of the grounds of his motion for a new trial. It is recited in this ground of the motion for a new trial, that when the defendant was put on notice that the case would be called for trial on a certain day, he presented a petition to the court asking that an order be granted allowing these witnesses to be brought into court to be sworn in his behalf. The petition alleged that Hall and Stocks were convicts in the

penitentiary, and set out facts the accused proposed to prove by them, which, if true, appear to be material. The presiding judge declined to issue the order to have the witnesses brought from the penitentiary, for reasons assigned by him which will be found in the official report. One of the reasons was, that he felt he ought not to put upon the county the expense of bringing these witnesses from the penitentiary. He offered, however, to issue the order and have them brought into court if the defendant would relieve the county of this expense. Whether the judge erred in refusing to issue the order except on the terms proposed by him, is the controlling question in the case. The plaintiff in error contends that his petition asking the court to order the witnesses to be brought from the penitentiary to testify was founded on the act of September 27th, 1883 (Acts, p. 106), and that having complied with the provisions of that act, the judge erred in not granting the order. We do not think he complied with that act. The act requires the petition to be addressed, not to the judge of the superior court, but to the governor; and if the judge approves the petition, the act commands the governor to issue his order to the person having charge of the convict, to deliver him to the sheriff of the county in which the convict is desired as a witness. Addressing the petition to the governor is not a mere technicality; it is a matter of substance. The governor has control of all convicts confined in the penitentiary of this State, and the records in the executive department or in the office of the principal keeper of the penitentiary disclose where each convict is confined. The legislature may have been of the opinion that it would be better for the governor to issue the order than for the trial judge to do so. Whatever may have been the reason for the requirement, it prescribed the terms on which the application should be granted, and unless these terms were com-

plied with, the judge was not compelled to grant the application under this act.

2. It was contended that under the constitution, art. 1, section 1, paragraph 5 (Code, §4997), which declares that every person charged with an offence against the laws of this State shall have compulsory process to obtain the testimony of his own witnesses, and under section 4027 of the code, which declares that " any judge of the superior court may issue his order to any officer having any person in his custody lawfully imprisoned, to produce such person before his court for the purpose of giving evidence in any criminal cause pending therein, without any formal application or writ of *habeas corpus* for that purpose," the judge had the power, and it was his duty, to grant the order prayed for by the defendant. If section 4027 applies where the person desired as a witness is imprisoned as a convict in the penitentiary, it imposes no absolute duty on the judge to direct or require that the order for producing the convict shall be executed at the expense of the public, even though the applicant for the order be unable from his poverty to defray the expense, and even if the judge in the exercise of his discretion might, if he thought proper, make the county chargeable therewith. The constitutional right to have compulsory process for witnesses does not include the right of having them brought into court at public expense. On this subject see : State *v.* Kennedy, 20 Iowa, 372 ; State *v.* Waters, 39 Maine, 54 ; *ex parte* Marmaduke, 91 Mo. 228 ; Willard *v.* Superior Court, 22 Pacific Rep. (Cal.) 1120. No right of charging the public with the expense of bringing such witnesses into court has been expressly conferred by statute, except by the act of 1883, above referred to, and under that act the right is not unconditional, but is limited by the sound discretion of the judge, to be exercised on the special facts of the case.

3. Treating the application in the present case as having been made under section 4027 of the code, *supra*, and the judge not having denied the order or process applied for, but having only declined to have it executed. at the charge of the county, there was no abuse of discretion in refusing the application.

4. After a careful review of the other grounds of the motion for a new trial, we do not think the court abused its discretion in overruling them all.

*Judgment affirmed.*