21240. BRANNAN *v.* THE STATE.

Decided April 15, 1931.

*C. G. Battle,* for plaintiff in error.

*John S. McClelland,* solicitor, *John A. Boykin,* solicitor-general, *I. Leonard Crawford,* contra.

Luke, J. Error is assigned upon a judgment overruling a certiorari in a case from the criminal court of Atlanta, wherein Mrs. R. C. Brannan was convicted of the offense of keeping and maintaining a lewd house. W. A. Wells, a county police officer, sworn for the State, testified that the defendant operated a place in Fulton county known as "The Cat's Whiskers," which was "a

filling station, dance-hall, tourist camp and lunch-room;" that it consisted of wooden cottages; that on about July 27, 1929, witness saw a man and woman drive up to the place in an automobile, and that the defendant "fixed up one of those cottages, and this couple went in it;" that witness looked through the window of the cottage, and saw this couple in bed engaged in the act of sexual intercourse; that witness went to another cottage and saw "another couple doing the same thing;" that the couple told witness that their names were Hilderbrand and Mrs. Karas; that defendant went to the room occupied by this couple, "taken a flash-light and went around the back," and told them that "everything was all right;" that defendant said she was operating the place; that witness did not know whether the couples were married or not, but that Hilderbrand and Mrs. Karas were in one of the cottages, engaged in sexual intercourse.

W. S. Hilderbrand testified that he and a lady went to the "Cat's Whiskers" in July, 1929; that witness "intended to pitch a liquor party with the lady," but that he did not succeed in getting any whisky from the defendant; that witness happened to have about half a pint of liquor with him and drank it; that a few days previously witness had rented a cottage at the same place, and had the same lady with him on that occasion; and that witness and "the girl were lying on the bed,"·but that they did nothing else. Frank Donahue, a policeman, testified that he recognized the man who was with Mrs. Karas, and that he said his name was Brown; that the reputation of the place was bad; and that he saw another couple fornicating in another cottage. R. F. Jordan swore that the general reputation of the place was that of a lewd house.

Numerous witnesses for the defendant testified to the effect that they were acquainted with the place, and that its reputation was good. D. Q. Williams, who worked at the place, testified in part: "When I registered these people I did not ask whether they were married or not. . . All I would ask them to do—just put down Mr. and Mrs. . . Part of them had baggage, and part of them did not. I did not ask them whether they were married or not, and I did not care. When it was a Georgia tag on the car, I took the license number. If a man and woman drove into camp and registered for a cabin, they did not get one unless they had a tag from some other State. I would not give them one from Georgia."

The gist of the defendant's statement was that the place was her husband's, and that she was trying to attend to it while he was in the hospital, but that she had nothing to do with the cabins— that the boys rented them; that a couple "got mad and left because the officers kept sticking their heads in the window;" and that she was not guilty.

The main contention of plaintiff in error under the general grounds is that there was no evidence "to show that any act of adultery or fornication was committed—no evidence that either of the persons alleged to have committed the acts were married or unmarried." There was positive evidence that two acts of sexual intercourse were committed in two cottages of the tourist camp, and that one of the parties participating in such intercourse was named Hilderbrand and the other Mrs. Karas; and this, together with the testimony of Hilderbrand himself and the other evidence in the case, was, we think, sufficient to sustain the jury's conclusion that illicit intercourse was being committed, and that the defendant "did keep and maintain a lewd house, the same being a place for the practice of fornication and adultery," as charged in the indictment.

Special assignment (e) complains that the court erred in allowing the witness Wells to testify to the effect that, about a month prior to the time the defendant is alleged to have committed the offense charged in the indictment, a couple left her place at night and she followed them to Hapeville and begged them to return. The first objection, that this evidence was irrelevant, is not valid. The second objection, that the evidence was hearsay, is not good. The witness swore: "I am talking about what Mrs. Brannan said." Furthermore, the defendant, in her statement to the jury, said: "The party Mr. Wells had reference to, I followed to Hapeville— I surely did;" and then went more fully into the transaction than did the officer. "Allowing the introduction of illegal evidence offered to establish facts is not cause for a new trial, when such facts are either admitted by the objecting party or clearly established by uncontradicted legal testimony." *Mayes* v. *State,* 108 *Ga.* 787 (33 S. E. 811). See also *Milam* v. *State,* 108 *Ga.* 29 (3) (33 S. E. 818); *Gatlin* v. *State,* 18 *Ga. App.* 9 (9) (89 S. E. 345).

Ground (f) complains of the court's refusal to allow a witness for the State, on cross-examination, to answer the following ques-

tion: "You were undertaking all the time to destroy the business by running people away from there?" We see no reversible error in the court's ruling, especially in view of the fact that the witness answered the question in this language: "I never ran anybody away from there."

It appears from assignment (g) that in reply to the question, "You know who occupied that cabin?" the witness replied, "I know who they said their names were." Upon the court's overruling the objection that the question elicited hearsay testimony, the witness said: "I know who was in the other cabin—I looked in. It was Mr. Brown and Mrs. Karas." We see little merit in the contention that the witness could not testify that the parties told him that their names were so and so. However, in the answer actually given to the question the witness appears to have been testifying from his own knowledge. There is no merit in this ground.

A police officer having testified that he knew the reputation of defendant's place to be that of a lewd house "from people who generally went there, people that associated around there," and from what he "heard in the community," the assignment in ground (h) that such evidence was objectionable because the foundation for its introduction had not been laid is not valid. "It is no ground for the exclusion of the testimony of one who swears that he knows the general reputation of a house, or of a person, as to lewdness, that he can not tell the number of persons whom he has heard speak of the matter, or give the names of those from whose conversation he has gained his knowledge of the general reputation as to which he testifies. His examination and cross-examination go to the jury together, to be given such weight as it seems to them to be entitled to under all the circumstances disclosed by his testimony as a whole." *Fitzgerald* v. *State*, 10 *Ga. App.* 70 (3) (72 S. E. 541).

Assignment (i) is so similar to the foregoing one that it needs no separate consideration. It is without merit.

Assignment (j) sets out an objection to certain testimony sought to be elicited as hearsay. It not appearing that the witness answered the question, this ground is patently without merit.

Assignment (k) complains that the court erred in allowing officer Wells to testify as follows: "I heard the lady state about me being out there, sticking my head in the window and cabins every

night and bothering the sleepers. Neither myself nor this man who worked with me had been in this camp before." The defendant having stated to the jury that several tourists "kicked because they said either the street-car people or officers stuck their heads in the back window and they could not sleep," it was not reversible error for the witness to testify as he did.

Assignment (*l*) is that the court erred in charging the jury that one who aids or assists another in maintaining a lewd house "may likewise be convicted of the offense." The criticism is that there was no evidence to warrant the charge. It appears from the exception that the defendant stated to the jury that she did not own the place, and that she was only looking after it for her husband, who was in the hospital. The defendant said also that she did not "operate the place." The court stated a correct principle of law (*Ward* v. *State,* 22 *Ga. App.* 786, 97 S. E. 198), and the evidence warranted the charge.

Assignment (*m*) alleges error in the charge to the effect that it was not necessary for the State to prove any particular act of lewdness, "if, notwithstanding the lack of proof as. to any particular act, the circumstances are such as to satisfy the jury that the practice of fornication and adultery actually went on in the house." "It is not necessary, in order to make out the offense specified in section 382 of the Penal Code (1910), that the State should show any particular act of fornication or adultery to have been committed, if the evidence, either directly or circumstantially, is such as to satisfy the jury that the house was kept and maintained as a lewd house; that is, if, nothwithstanding lack of proof as to any particular act, the circumstances are such as to satisfy the jury that the practice of fornication and adultery actually went on in the house. *Fitzgerald* v. *State,* supra. Clearly the charge was in accord with the foregoing rule, and was not error.

Assignment (*n*), which is but an amplification of the general grounds, complains that "there is no evidence in the case to show that any act of adultery or fornication was committed in either of the cabins," there being "no evidence that either of the parties alleged to have committed the acts were married or unmarried." As indicated in our ruling upon the general grounds, there is no merit in this last assignment.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur*