## MAY v. THE STATE.

No. 12013. JANUARY 12, 1938.

**336**

*R. Earl Camp* and *Lester F. Watson,* for plaintiff in error.

*M. J. Yeomans, attorney-general, J. Roy Rowland, solicitor-general, Ellis G. Arnall, E. J. Clower,* and *Blackshear & Blackshear,* contra.

BELL, Justice.   Clarence May was convicted of the murder of Mack Lewis, with a recommendation to the mercy of the court.   His motion for new trial was overruled, and he excepted. Several persons testified that they were present and witnessed the tragedy; and while there was some variation in the testimony, the jury were authorized to find that the killing occurred under substantially the following circumstances.   Mack Lewis was standing or sitting in front of a restaurant in conversation with others, when Clarence May approached and asked Lewis the question, "Did you mean what you said, that I had better  .  .  have my pistol?"   Lewis replied, "Forget it," and started to go into the restaurant, when the defendant shot and killed him.   In his statement to the jury May contended that he had to shoot the deceased to save his own life.   He stated that he and Lewis had been good friends until a few hours before the killing, when Lewis had become unjustifiably angry with him and told him, "You better damn sure have your gun the next time we meet, because I am going to kill you."   He further stated that he knew that Lewis had a gun in the restaurant, and that when he asked Lewis if he meant what he had said about the gun, Lewis dashed for the door, and the defendant shot him.

The defendant does not insist upon the general grounds of his motion for new trial, but relies on several special grounds, as follows:   (1)   Because the court overruled the defendant's motion for a continuance, based upon the absence of three witnesses who in the forenoon of the day of the homicide heard the deceased make threats that he intended to kill the defendant, and who communicated such threats to the defendant before the commission of the homicide in the afternoon.   In response to this motion the solicitor-general stated that he would admit that the witnesses would each testify as contended by the movant, and that such was the "truth of the case."   (2)   It is contended that the court erred in refusing to declare a mistrial because of improper cross-examination of character witnesses.   The defendant introduced a witness who testified that he knew the general character of the defendant,

Clarence May, "from what others say," and that he had "never heard anything bad about him." On cross-examination the solicitor-general propounded the question, "Did you ever hear anything about Clarence being the father of a bunch of illegitimate children?" Whereupon the following occurred: Mr. Camp, for the defendant: "I object to the question of the solicitor-general about Clarence being the father of a bunch of illegitimate children. It is unfair, illegal, prejudicial, and inflammatory, without evidence upon which to base it. Neither can my friend supply any evidence upon which to base; and I renew my motion in the interest of fairness, and think the court should grant a mistrial in this case." Mr. Rowland, the solicitor-general: "I understand I can prove by Preacher Horne that he is the father of a bunch of illegitimate children." The court: "Motion overruled." The refusal to declare a mistrial is assigned as error on the following grounds: "(a) Because, up to the time of the introduction of such evidence, and the asking of such question, there was not one syllable of evidence in the record to authorize such a question. (b) Because there was not, before the asking of said question, and the prejudicial intimation, nor afterwards in the entire record, any basis to have justified such an observation and prejudicial statement by the solicitor-general as to the character of the defendant. (c) Because said statement as embodied in said question tended to, and did, besmirch the character of the defendant on trial, without evidence to support it, when the entire record of witnesses introduced shows that the defendant was an exemplary negro. (d) Because said intimation embodied in such a question destroyed the effect of the defendant's evidence as to his good character, and was calculated to prejudice the minds of the jury and influence their verdict. (e) Because the State never introduced Preacher Horne nor any one else, by which to sustain his prejudicial statement, and the effect of the inflammatory observation was left for the digestion of the jury against the legal and just rights of the defendant. (f) Because the manifest injustice of the intimation and observation by the solicitor-general is made manifest by the affidavit of Rev. J. N. Horne, which is hereto attached, and by specific reference is made a part of this ground, showing that he never made such an observation to the solicitor-general nor to any other person, and further showing that he had never given such infor-

mation to the solicitor-general nor to any other person." (3) Because the solicitor-general was permitted on cross-examination, over objection by the defendant, to propound the following question to each of several named witnesses who were introduced by the defendant and testified as to his good character: "Did you ever hear of Clarence May paying a $15 fine for disorderly conduct in the recorder's court of the City of Dublin?" The defendant's objection was that "said question, in connection with the other question in reference to the defendant being the father of illegitimate children, error on which is assigned in the second ground of this amended motion, enabled the State to damage and besmirch the character of the defendant before the jury through the progress of the case, without any evidence upon which to base the damaging intimations, thereby destroying, and intending to destroy, the defendant's proof of good character, which was uncontradicted in the record by any legitimate evidence."

■ The judge did not err in overruling the motion for a continuance. The Code provides that "no continuance shall be allowed in any court on account of the absence of a witness or for the purpose of procuring testimony when the opposite party is willing to admit, and does not contest the truth of, the facts expected to be proved; and the court shall order such admission to be reduced to writing." Code, § 81-1411. Under this section it has been held that "where the prosecuting officer admits the truth of facts to which it is claimed absent witnesses would testify, it is not error to overrule a motion for a continuance based on the absence of such witnesses." *Watson* v. *State*, 118 *Ga.* 66 (2) (44 S. E. 803). The defendant has not complained of any failure on the part of the court to order the admission of the solicitor-general to be reduced to writing. In view of the statute there is no substantial merit in the contention that such admission "did not compensate for the absence of the sworn testimony and the presence of the witnesses." Nor did the action of the court deprive the defendant, as contended, of any constitutional right to have compulsory process to obtain the testimony of his witnesses. *Roberts* v. *State,* 94 *Ga.* 66 (2), 72 (21 S. E. 132); *Smith* v. *State,* 118 *Ga.* 61 (44 S. E. 817).

■ Special grounds 2, 3, and 4 of the motion for a new trial relate to cross-examination of witnesses, and not to improper argu-

ment or remarks by the opposing attorney. The cases cited on the latter subjects are therefore not in point. The defendant having introduced witnesses who testified as to his general good character, it was the right of the solicitor-general on cross-examination to interrogate these witnesses as to particular matters for the purpose of testing the extent and foundation of their knowledge and the correctness of their testimony on direct examination. These grounds are within the principle ruled by this court in *Ozburn* v. *State,* 87 *Ga.* 173 (4) (13 S. E. 247), to the effect that a witness who has testified to the good character of the accused may be asked on cross-examination if he has not heard of specific charges against him. In *Moulder* v. *State,* 9 *Ga. App.* 438 (71 S. E. 682), it was held: "Where character is put in issue, the direct examination must relate to general reputation, good or bad, as the case may be; but on cross-examination particular transactions, or statements of single individuals, may be brought into the inquiry, in testing the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination." See also *Warrick* v. *State,* 125 *Ga.* 133 (6) (53 S. E. 1027); *Dotson* v. *State,* 136 *Ga.* 243 (2) (71 S. E. 164); *George* v. *McCurdy,* 42 *Ga. App.* 614 (5), 620 (157 S. E. 219); *Maner* v. *State,* 45 *Ga. App.* 594 (3), 598 (165 S. E. 305). It appears that immediately after the defendant's attorney had objected to the question whether the witness had ever heard that the defendant was the father of a bunch of illegitimate children, the solicitor-general remarked that he understood he could prove by a named witness that such was true. The solicitor states in his brief that this was a mere side remark made only to counsel for the defendant after he had moved for a mistrial. Whether or not this explanation is supported by the record, it affirmatively appears that no objection whatever was made to this remark, and that the question propounded by the solicitor was the sole basis of the motion for a mistrial. See *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752); *Sims* v. *State,* 177 *Ga.* 266 (170 S. E. 58).

The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, Chief Justice, who dissents upon the ground that the court erred in not declaring a mistrial because of the remark of the

solicitor-general to the effect that he could prove that the defendant was "the father of a bunch of illegitimate children."