9574.  WESTERN UNION TELEGRAPH CO. *et al v.* OWENS.

1. The meritorious special demurrers to the petition were sufficiently cured by amendment, and the petition as amended was not subject to the general demurrers interposed by the three defendants. There was no misjoinder of parties, under the allegations made.
2. The evidence disclosed liability on the part of the Georgia Northern Railway Company and the Western Union Telegraph Company, but failed to fix liability against the Southern Bell Telephone and Telegraph Company.
3. There was no harmful error in the failure of the court to instruct the jury that they might find one or more or all of the defendants liable.
4. Whether or not the defendant failed to exercise ordinary care was a question for determination by the jury.          ,          .
5. Where a series of propositions are presented en bloc in a single request to charge, the court is not required to give them or any part of them, if any one of them is erroneous or inapplicable to the case on trial.
6. The court erred in overruling the motion for a new trial made by the Southern Bell Telephone and Telegraph Company, but the judgments overruling the motions for a new trial made by the Georgia Northern Railway Company and the Western Union Telegraph Company are affirmed.          .          .          ,

DECIDED JANUARY 14, 1919. REHEARING DENIED JANUARY 28, 1919.

Action for damages; from city court of Thomasville—Judge W. H. Hammond.  January 28, 1918.

*Bennet & Harrell, Walters & Redfearn, Theodore Titus, Merrill & Grantham,* for plaintiff in error.

*Branch & Snow, H. J. MacIntyre,* contra.

WADE, C. J.  1.  The plaintiff's petition alleged that he was injured by stumbling over certain telegraph and telephone wires which had been precipitated to the ground by a violent wind, across a road in daily use by pedestrians and vehicles, because of the defective and rotten condition of the posts to which the wires

were affixed, and that said posts and wires were maintained jointly by all three of the defendants named, for the transaction of their business, as was particularly set out, and that all of said defendants "did have and maintain" the line of posts from which were suspended the wires causing the injury; and it was further alleged that all of the defendants were negligent in that they maintained, across and over said road, telegraph and telephone wires attached to posts which were rotten and insecure, and therefore liable to fall at any time across the road, and in allowing said posts to become rotten and unsafe, and in failing to replace or repair said posts, notwithstanding the defendants had long known of their insecure and unsafe condition, or could have had such knowledge by the exercise of ordinary care. Under the allegations made, there was no misjoinder of parties. The petition as amended was not subject to the general demurrers or to the various special demurrers separately interposed by the three defendants.

2. Upon the trial the evidence disclosed that the Georgia Northern Railway Company originally constructed a telegraph line along its right of way, which it thereafter sold absolutely to the Western Union Telegraph Company, making at the time a separate contract with said telegraph company that in consideration of the setting apart for the exclusive use of the railway company of one of the wires attached to the posts of the system, said railway company would "furnish at its own expense all the labor to maintain the telegraph company's line of poles and wires along the railway company's railroad. . . in good order and repair, and to reconstruct said line of poles and wires when required by the telegraph company;" all poles, wires, insulation, and other material for such repairs and reconstruction to be furnished by the telegraph company. It was further shown that the Southern Bell Telephone and Telegraph Company purchased from the telegraph company, at an agreed price per annum, the privilege of attaching to said posts two lines of wire, which were to be exclusively owned, used, and maintained by said telephone company, but the evidence nowhere discloses which particular wires so attached to the posts of the telegraph company were the property of the telephone company, or which one of the two wires which belonged to the telegraph company was allotted to the use of the railroad company; nor did it appear which particular wire or wires caused the plaintiff to stumble, fall, and suffer the injuries sued for.

(a) The telegraph company being the owner of the poles, the defective condition of which was the direct cause of the injury complained, of, was liable therefor, and this regardless of what particular wires, attached to its poles by its consent, actually produced the injury. The fact that said telegraph company had employed the railway company to repair and maintain the posts and wires belonging to said telegraph company could not in anywise relieve the owner of the posts from liability to third persons because of the failure of its servants or employees to carry out and perform the contract and repair, and the court did not err in declining to allow the amendment setting up the said maintenance contract as a matter of defense. Incidentally, it appears that this contract provided that the line of poles and wires should be reconstructed by the railway company only "when required" by the telegraph company, and there was no proof that any such requirement had ever been made.

(b) The railway company parted absolutely with the title to the wires and poles of the telegraph system, and its failure to maintain them in safe condition, in accordance with its contract with the telegraph company, did not, therefore, render it *primarily liable* to third persons, suffering injury resulting from its breach of contract with the telegraph company. Nevertheless it must be inferred from the evidence (and it is conceded in the brief for the railway company) that the posts of the telegraph system, though owned, since the sale to the telegraph company on December 12, 1899, by the last-named company, were allowed and permitted by the railway company to remain upon its right of way, in a rotten and unsafe condition, with potentially dangerous wires attached thereto, crossing over a public way. Hence said railway company was liable for any injuries directly resulting to passers along said road, from contact with said wires, where such persons were at the time in the exercise of proper care, not because of any omission to perform its duty to maintain the wires and posts under its contract with the telegraph company, but for wrong-doing in permitting the dangerous instrumentality to exist on its property. The decision in *Southern Railway Co.* v. *Sewell,* 18 *Ga. App.* 544, 552, 553 (90 S. E. 94), in so far as it relates to misfeasance and nonfeasance, is not opposed to this ruling.

(c) The telephone company, though having no title to the

posts on which its wires were strung, nevertheless strung such wires over and across a public highway, where people constantly passed, and where injury to them was liable to result unless, in the exercise of proper diligence towards the public, the wires were safely attached to sound and stable posts or other objects on either side of such highway, and consequently liability attached to said company for any injuries resulting to a traveler on said highway, brought about by contact with its particular and individual wires. The telephone company would not, however, be liable for injuries resulting from the defective and rotten condition of the posts to which its lines were attached, by the consent of the actual owner of the posts, *unless* it was made to appear that the injuries were caused by its particular wires. If the wires of the telephone company did not in fact injure the plaintiff, it was of course immaterial whether they were attached to stable or unstable supports, or whether the supports fell or remained standing, so far as the creation of any liability against that company was concerned. The evidence failed altogether to indicate or even in anywise to suggest which of the four wires attached to the rotten posts were the property of the telephone company, and there was no testimony from which it could be definitely inferred that the plaintiff stumbled against or came in contact with either or both of the wires of the telephone company in such a way as to produce or contribute to the injuries complained of, and hence the verdict as against the telephone company was unauthorized by the proof, as no injury was shown to have resulted from its negligence in properly supporting its wires.

3. Under the foregoing rulings the telegraph and railway companies were both liable for any injuries to travelers on the highway, shown to have resulted from the rotten and defective posts actually owned by the one company, and permitted by the other to remain on its right of way, to which the wires inflicting the injury were attached, and, the jury having found that the plaintiff was entitled to compensation for such injuries, no harm resulted to either of these defendants from the failure of the court to instruct the jury that a joint or several verdict might be returned—or a verdict against one or more of the three defendants or in favor of the remaining one or more. Likewise, it is unnecessary to consider the several grounds of the motion for a new trial made by

the telephone company which are based upon the failure of the court to submit various contentions of that defendant, a new trial being granted to the last-named company because the evidence was insufficient to show that it was liable.

4. Whether or not the plaintiff failed to exercise ordinary care and diligence in running along a well-known road in the dark, with his hat partially over his eyes to protect them from the sand and trash carried by the high wind prevailing at the time, notwithstanding the degree of knowledge possessed by him as to the defective condition of one of the poles adjacent to the road, was a matter for the jury, and this court cannot arbitrarily usurp their province.

5. It is not error to refuse a request to give in charge to the jury a series of propositions presented en bloc, where any one of the propositions is unsound, notwithstanding the various propositions included in the one request are stated in separate paragraphs, more or less disconnected. In this case, among the propositions presented in the one request, was the following: "I charge you further, that before the plaintiff is entitled to recover any amount in this case of the defendant, you must believe from the evidence that the plaintiff was free from fault." This was not a correct statement of the law, and the court properly refused to comply with the request as presented. The legal principles embodied in the request which were applicable were in fact submitted to the jury. See, in this connection, *Thompson* v. *O'Connor,* 115 *Ga.* 120 (5), 123 (41 S. E. 242); *Wallis* v. *Heard,* 16 *Ga. App.* 802, 803 (86 S. E. 391); *Shippey* v. *Owens,* 17 *Ga. App.* 127 (3) (86 S. E. 407); *Woodard* v. *State,* 18 *Ga. App.* 59 (2) (88 S. E. 825); *Conley* v. *State,* 21 *Ga. App.* 135 (6) (94 S. E. 261). In *Thompson* v. *O'Connor,* supra, the request to charge not only comprehended various propositions of law presented in separate paragraphs, but the paragraphs were identified as "(a)", "(b)", "(c)", etc. In *Shippey* v. *Owens,* supra, the request held to be an en bloc request was introduced with the words: "The court is requested to charge," and following this appeared five different propositions, numbered 1, 2, 3, 4, and 5. In the case under consideration, not only does the presiding judge, in approving the grounds of the amendment to the motion for a new trial presented by the defendant that preferred the request which was refused, certify that the

several propositions included in the one request to charge "were not preferred separately, but were embodied in a single request," one of which was not the law, but the request itself, which appears in the bill of exceptions as an exhibit, is headed: "Request to charge made by Bennett and Harrell, attorneys of record for the Western Union Telegraph Company," and each of the 14 paragraphs following commences "I charge you further," except one which commences, "You will determine," etc. Clearly this was, under the rulings cited, an en bloc request, and not a number of separate requests; and one, if not more, being erroneous, the court did not err in declining to comply with the request as preferred.

6. The evidence authorized the verdict returned against the Georgia Northern Railway Company and the Western Union Telegraph Company, and the judgment overruling their motions for a new trial is affirmed. But as the evidence does not authorize a recovery against the Southern Bell Telephone and Telegraph Company, the judgment overruling its motion for a new trial is reversed. See, in this connection, *Austin* v. *Appling,* 88 *Ga.* 54 (6) (13 S. E. 955); *Bonner* v. *Standard Oil Co.,* 22 *Ga. App.* 532 (96 S. E. 573).

*Judgment reversed in part, and affirmed in part. Jenkins and Luke, JJ., concur.*