45822. SMITH et al. v. NELSON.
45823. KNIGHT v. NELSON.

ARGUED JANUARY 11, 1971—DECIDED APRIL 8, 1971—
REHEARING DENIED APRIL 29, 1971.

*Bouhan, Williams & Levy, Frank W. Seiler, Brannon, Clark & Hester, Perry Brannen, Perry Brannen, Jr.,* for Smith et al.

*Falligant, Doremus & Karsman, Ogden Doremus,* for Knight.

*Frank S. Cheatham, Jr.,* for appellee.

EBERHARDT, Judge. ■ *The general grounds.* The Knight appeal is as to the overruling of his motion for new trial on the general grounds only, and as to it we find no difficulty in concluding that the general grounds are without merit. There was ample evidence which authorized a finding that he was guilty of gross negligence.

The situation in the Smith-Whitaker appeal is somewhat differ-

ent. In it appellants strongly urge that Mr. Nelson's injury and death resulted *solely* from the negligence of Knight, and on this we find the evidence strongly in support of their position. There can be no doubt that Knight had ample room to pass to the left of the tractor-trailer, that there was really no reason why he should not have seen it, unless, indeed, it was because he was, at the time, keeping his eye on the white line at the right edge of the pavement and following it—not keeping a lookout ahead, as it was his duty to do. *Leggett v. Brewton,* 104 Ga. App. 580 (3) (122 SE2d 469). Can there be any doubt that if he had been looking ahead the rig with its blinking light and the driver waving his hands and yelling would have attracted his attention and that, seeing them Knight should have passed to the left, there being ample room to do so? We think not. But if Nelson's injury was not attributable *solely* to Knight's negligence, and if it appears that Whitaker was negligent in the stopping of his vehicle and that his negligence is not, for any reason, excusable, and that it contributed to Nelson's injury, he would not be confined to a recovery against Knight, for Knight's negligence was not imputable to Nelson. *Brinson v. Davis,* 32 Ga. App. 37 (122 SE 643); *Central of Ga. R. Co. v. Barnett,* 35 Ga. App. 528 (134 SE 126); *Anderson v. Collins &c. R. Co.,* 47 Ga. App. 722 (171 SE 384); *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159 (91 SE2d 135).

As to whether Knight, if he were the plaintiff, would be barred from recovering by *Code* § 105-603, for failure to exercise ordinary care for his own safety even if there were negligence by Whitaker in stopping the truck on the highway, see *Sumner v. Thomas,* 72 Ga. App. 351 (33 SE2d 825). If Knight's negligence were the *sole* proximate cause of Nelson's injuries (as the jury might well have found them to be) plaintiff here would be barred from a recovery against Smith and Whitaker, even though it should appear that Whitaker was, in some respect, negligent in stopping the tractor-trailer on the paved portion of the road. *Davis v. Tanner,* 75 Ga. App. 296 (43 SE2d 165); *Hulsey v. Atlanta Transit System,* 98 Ga. App. 1 (104 SE2d 618).

If, however, it can be said that Whitaker was in some manner guilty of negligence in stopping the truck on the paved portion of the road, it becomes our duty on appeal to construe the evidence

to uphold the verdict, and if we should conclude that a jury question was raised, the jury was authorized to return the verdict against both Knight and Smith-Whitaker. *Ga. Power Co. v. Blum,* 80 Ga. App. 618 (57 SE2d 18); *Pittman v. Staples,* 95 Ga. App. 187 (97 SE2d 630).

Our inquiry here, then, is whether the jury may have been authorized to find that Whitaker was guilty of any negligence. If he was not, then, of course, no verdict could have been lawfully returned against him or Smith, for a showing of negligence against the defendant is a sine qua non for authorizing a verdict against a defendant in this kind of action.

The Uniform Act Regulating Traffic on the public highways provides (*Code Ann.* § 68-1668 (a)): "Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practical to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon said highway. (b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position: Provided, however, the driver or person in charge of such vehicle shall cause such vehicle to be removed from the roadway as promptly as possible; and if such vehicle becomes disabled after sunset, in that event, prior to the time it is removed from the highway, the driver or person in charge shall give a signal by lights or flares or both of the presence of such disabled vehicle on the highway."

The tractor-trailer was not "parked" on the highway; rather, it was stopped. It was "disabled" from continuing its course of travel due to the flat tire, but not to the extent that it could not have been moved or pulled off the paved portion of the road *if it were practical to do so.* We think a jury question was made as to that. The driver feared that the shoulders and dirt areas off the pave-

ment were soft and that if the rig were pulled off onto it he could not effect a tire change and that with the heavy load he would not be able to return to the highway. The jury might very well have found this to be the legitimate position of an ordinarily prudent man under the same or similar circumstances, and if so, it should have found him to be guilty of no negligence. However, there was evidence that would authorize a finding that the shoulders and other areas were sufficiently firm to hold the heavily loaded rig without a bogging down, and that it would have been practical to turn off the paved highway in several places between where the tire blew out and where the rig was finally stopped. But the question for the jury to determine was not whether it had been *possible* to drive the rig off the pavement for stopping, but whether it had been *practical* to do so, and in making that determination it was bound to apply the standard of what a reasonable man would have done under the same or similar circumstances. We find no issue as to the matter of lights on the rear of the trailer or as to visibility for a distance of at least 200 yards back of it, or whether there was sufficient unobstructed width of the highway left opposite the rig to permit free passage to the left—the evidence shows all of these without contradiction. The jury was not authorized, *as a matter of hindsight,* or of second-guessing, to conclude that the rig should have been driven off the pavement simply because it was in fact pulled off after the accident at the policeman's request, but was required to determine the matter from the viewpoint of what a reasonable man would have done if that man had been operating the rig at the time and place and under the same or similar circumstances and with the same information (but no more) available to him that was available to Whitaker in determining his course of action.

We believe that this proposition was made clear to the jury by the judge's charge, and since a verdict was returned against Smith and Whitaker, we must conclude that the issue was resolved against them on that basis.

Of course, it was necessary that the jury go further and determine whether Whitaker's negligence in stopping the rig on the paved portion of the highway naturally combined with that of Knight to cause Nelson's injury. Again, this was made clear by

the judge's charge, and we must conclude that the jury resolved that, too, against them.

If the evidence authorized the jury to reach the conclusion that it did, as we conclude that it did, we should not disturb the verdict and judgment unless that is required because of some error of law. The general grounds are without merit.

■ Error is enumerated on a charge to the jury relative to the "centerline" and centerline marking of the road, in connection with his charge relative to the stopping or parking of a vehicle closer than twelve feet from the "centerline," prohibited by *Code Ann.* § 68-1670 (a) (15).

As we have indicated, the total width of the paved portion of the highway at this point was 36.3 feet. A white solid line for making traffic lanes was painted on the paving, making a lane twelve feet wide for traffic traveling south, and the remainder of 24.3 feet for traffic traveling north, whether going on by the Tremont Road entrance, or turning into it. The policeman testified that vehicles intending to turn left into Tremont Road were to use the portion of the road nearest the painted line, and that it was often necessary for that traffic to stop in order to allow approaching traffic (coming south) to clear the intersection, before making the left turn. Vehicles intending to go straight on northerly and over the viaduct ahead were to move to the right in order to avoid the slowing down or stopping for those who were turning left into Tremont Road, but could, of course, if they chose to do so, proceed as well in the portion nearest the painted "centerline" and go on northerly. There was no painted line indicating two lanes for the traffic patterns of those traveling northerly, whether intending to go straight ahead or to make the left turn. The portion of the paved road available to them, however, was 24.3 feet wide. Whitaker had stopped the tractor-trailer on the extreme outer portion of the paved road—within three to six inches of the edge—leaving for passing to the left more than sixteen feet of paved road.

The court charged that part of *Code Ann.* § 68-1670 (a) (15) which makes it unlawful to stop or park within twelve feet from the centerline, and in that connection charged: "In this case, as you will see by the chart, the pavement was widened at this place. What was the centerline? Was it the line that marked or de-

marked the difference between southbound and northbound traffic? What was the centerline? Or was it a point equidistant between the edge of the pavement on one side and the edge of the pavement on the other? And if so, was the truck within twelve feet of that particular point or line? . . . What this was and how it was used is for you to determine." Timely exception was made to this portion of the charge on the ground that this permitted the jury to fix and determine the location of the "centerline," and it is now enumerated as error.[1] While the exception was not in the precise terms which we once required for a bill of exceptions, it focused attention on the charge with reference to the statute relative to parking within twelve feet of the centerline, and complained that the court had told the jury that "they could decide whether it (the centerline) was [to be determined by measurement] from the edge to the edge of the pavement, and thereby determine [it to be] another line" than the one shown on the map,[2] of the highway in question. We hold that the exception made was sufficient to in-

---

[1]The exception, as reflected in the record, was: "Now I also want to call the court's attention to another proposition that I think Your Honor charged incorrectly to the jury, but maybe I didn't understand it. When you were charging the jury with reference to the twelve-foot statute, parking twelve feet from the centerline of the road, you told the jury that they would be permitted to look at the lane under the evidence and find out what the line was. I think you were referring to the ones drawn on the map showing the centerline. I believe—The Court: Was that—Mr. Brannen: And I think you went on and told them this, and this is what I am talking about. I can be wrong but my impression was and recollection is that after having told them that, you went on to tell them that they could decide whether it was from the edge to the edge of the pavement and thereby determine another line, but I don't think you told them that they could determine either line. I could have misunderstood the court, but that is my recollection."

[2]An engineer's or surveyor's map, drawn to scale, on which the portion of the highway whereon the incident occurred is shown, with the lane lines as painted thereon by the highway authorities, was in evidence.

form the court as to the portion of the charge contended to be erroneous and of the error contended. It was thus sufficient to meet the demands of § 17 (a) of the Appellate Practice Act (*Code Ann.* § 70-207 (a)), and it is unnecessary that we consider whether the error is remedial under § 17 (c) of the Act (*Code Ann.* § 70-207 (c)). If heretofore we have, on occasion, been more restrictive than the statute our rulings should yield to the statute.

We agree that this charge was egregious error. While *Code Ann.* § 68-1670 (a) (15) does not prescribe where the centerline of a public road or highway is to be, it is delegated to the State Highway Board to place markings on the road or highway for the indication of traffic lanes, no-passing zones, and the like, and it is provided that users of the road or highway shall observe and obey them. *Code Ann.* §§ 68-1504, 68-1638. Some markings are permitted to be placed by local authorities. *Code Ann.* § 68-1607. While the exact question here was not presented in *Pittman v. Staples,* 95 Ga. App. 187, supra, the principle was certainly the same, as is indicated in "On Motion for Rehearing" in that case where it was held that the centerline of a four-lane highway having a median strip between the northbound and southbound lanes is not located at the middle of the median. In order to afford a reasonable and intelligent meaning to the statute relative to the prohibition of parking within twelve feet from the "centerline" we must relate it to the traffic lane markings. This road is basically a two-lane highway, and the line placed thereon for marking traffic lanes for northbound and southbound traffic must, for this purpose, be regarded as the "centerline." The charge was confusing, and it left the jury with the privilege of moving the centerline to some unmarked point on the highway, and since there were twelve jurors they might have had twelve ideas as to where it should be located, without any of them being correct. There must be some reasonable standard applied, and the only reasonable one that appears, absent a specific provision of the statute to the contrary, is to follow the markings which the highway or local authorities are authorized to make. Since motorists are required to observe and obey these markings, a jury should not be permitted to do otherwise in its deliberations. This was an error of gravity, for the jury may very well have concluded, under this charge, that the

centerline was at a point leaving less than twelve feet between it and the tractor-trailer, and thus that Whitaker had been guilty of negligence for that reason, if for no other. On another trial the charge in this respect should be clearly adjusted to the evidence.

■ Error is enumerated by Smith-Whitaker on the admission, over timely objection, of testimony of the witness Edwards that other trucks and truck-trailer rigs had, on other occasions, pulled off the pavement and stopped on the shoulders or areas beyond the shoulders in the vicinity and had been able to return to the highway without difficulty.

The question to which objection was directed was: "Do trucks ever—trailer-trucks—ever pull off the highway on your right of way in your property?" The objection was that this was "irrelevant in this case, what other trucks do on any occasion," and "it's too broad and fails to define for the witness the nature of the truck that was involved in this accident or the load capacity that it had on it." The objection was overruled, and the witness testified that he had seen trailer-trucks pull off the paved portion of the road (the area being along the road between where Whitaker learned that he had tire trouble and where he stopped)—"maybe one a day, maybe one a week," and as to the sizes, they were "just regular trailer-trucks."

We think the objection was good and should have been sustained. It does not appear that the question or the answers made in any way related a similarity of the other instances except that the trucks were "just regular trailer-trucks." It would make a material difference whether they were of similar size, running empty or heavily loaded, as the one here involved was. Evidence offered for making comparisons should reveal similar or substantially similar conditions. Unless the essential similarity for comparison appears, the evidence should be excluded, for it may very well be harmful. *Dunn v. Beck,* 144 Ga. 148 (2) (86 SE 385); *Sammons v. Webb,* 86 Ga. App. 382, 388 (71 SE2d 832); *McBrayer v. Ballenger,* 94 Ga. App. 620, 623 (95 SE2d 718); *State Hwy. Dept. v. Howard,* 119 Ga. App. 298, 302 (167 SE2d 177).

Appellee contends that if this were error it was waived when the witness later testified under cross examination by counsel for Knight that "trucks with vans—van-type trucks, where the van

could be disconnected from the engine" parked in and used the area off the highway, in front of and near his used lumber business, and that it was waived when the witness Jernigan later testifed, without objection, that trucks often stopped off and parked in the area in front of and near his business—trucks "of various weights; empty weights would run around 16,000 pounds and loaded weights up to 65 or 70,000 pounds," and that none of them had bogged down. It is a close question as to whether the subsequent testimony of Edwards relative to van type trucks, not objected to by counsel for Smith-Whitaker, worked a waiver, but we doubt that it should. We think this testimony was objectionable on the same grounds as his previous testimony, but since it patently referred to a different type of truck from that which Whitaker was driving we do not think it operated to waive the objection to his prior testimony concerning trailer-type vehicles. As to the evidence of Jernigan, it is obvious that when he gave the weights as to the trailer-trucks, both empty and loaded, he removed the ground which might otherwise have afforded an objection to his testimony; but that did not remove it as to the Edwards testimony.

■ The court charged that the jury should determine whether Mr. Whitaker made an emergency stop, and that they should "consider the size of the vehicle, its weight, the weight of the load, the failure of the tire and such events as might have transpired had the driver chosen a different handling of the vehicle. . . *If there was an alternate course that he could have taken, you are to determine whether or not that course would have been safe."* The italicized portion was timely excepted to on the ground that it afforded the jury, with hindsight, a right or privilege of "second-guessing" the driver and that the standard to be applied was what an ordinarily prudent man would have done in the same or similar circumstances. The court agreed that the exception was proper and recharged the jury, admonishing them that they should determine from the evidence whether Mr. Whitaker acted as an ordinarily prudent person would have done under the same or similar circumstances, and that if they should find this to be the case there would be no negligence on his part, and concluded by telling them to use the prudent person standard and "don't second-guess the driver."

After several hours of deliberation the jury requested further instruction on the matter of what constituted an emergency stop.

The court charged that whether an emergency existed was a fact question, and that they should determine from the circumstances shown, whether it had been necessary for Mr. Whitaker to stop the rig, whether a continued driving of it in its condition would have been a menace to itself or to other traffic on the highway traveling in either direction, and if so, they might find an emergency to have existed; but that if they should find that the rig could have been driven further without menace to other traffic or to itself until it reached a point where it could have been pulled off the highway, the stop would not have been an emergency stop.

There was again an exception on the ground that this charge removed the reasonable man standard, as applicable to this situation and in the light of what the driver may have known about his load and the condition of the vehicle. No further charge was given, and the overruling of this exception is enumerated as error.

While the latter charge might have been couched in better language, making sure that the reasonably prudent man standard was to be applied, and that their conclusion should not be based upon the fact that the rig was, in fact, moved onto the shoulder of the road after the collision at the request of a policeman, we do not think that it confused the jury, particularly in the light of the prior charge—which should be considered in connection with this one. We are confident that on another trial this will be done.

■ Thus, we find no error in Knight's appeal, but do find error demonstrated in the appeal of Smith-Whitaker. What is the result of this? In *Tedlie v. Dill,* 3 Ga. 104, the Supreme Court asserted, concerning a judgment against joint defendants: "A judgment, as being an entire thing, cannot be reversed in part and stand good as to the other part, or be reversed as to one party and remain good against the rest." In three other cases it was held that verdicts for separate amounts could not be rendered against joint tortfeasors. *Simpson v. Perry,* 9 Ga. 508; *McCalla v. Shaw,* 72 Ga. 458; *Hunter v. Wakefield,* 97 Ga. 543 (2) (25 SE 347, 54 ASR 438). Where some of the defendants (joint tortfeasors) were not served but judgment was obtained against all it must be set aside as to

all. *Harralson v. McArthur,* 87 Ga. 478 (2) (13 SE 594, 13 LRA 689). In *Hunter v. Wakefield,* 97 Ga. 543 (2), supra, it was held that "Where, in such a case, there is a verdict for the plaintiff against some of the defendants for a given amount, and in favor of the other defendants, *there can be no new trial between the plaintiff and the latter alone;* but if a new trial is granted at all, it must be granted as to all the parties." (Emphasis supplied.) The latest word from the Supreme Court on the matter is found in *Southeastern Truck Lines v. Rann,* 214 Ga. 813 (108 SE2d 561), where, at page 817, it was declared that "a verdict and judgment rendered against two or more joint tortfeasors is *single and indivisible,* and must stand or, as in this case, fall in toto." (Emphasis supplied.) This court has held: "A plaintiff can sue one or more than one, or he can sue all, of several joint tortfeasors in the same action, and the jury, by its verdict, can bind one and relieve another, as the evidence may authorize, but if the verdict be rendered against all of the defendants, the *judgment thereon is single, and must stand or fall alone.* Such a judgment is in law a creature of such nature that *it cannot survive the severance or amputation of any one of its members." Finley v. Southern R. Co.,* 5 Ga. App. 722 (3) (64 SE 312). Accord: *Crowe v. Fisher,* 104 Ga. App. 725 (122 SE2d 755); *Fulghum Industries v. Pollard Lbr. Co.,* 106 Ga. App. 49, 53 (126 SE2d 432). If, as both courts have held, the judgment is entire and indivisible, it would seem that any striking down of it, or the reversal of it as to any party defendant, would, ipso facto, work a reversal of the whole and as to all parties, and this is generally true.

By some metaphysical reasoning a way has been found in some of our cases to divide the indivisible. The Supreme Court refused to attempt it, however, in *Hunter v. Wakefield,* 97 Ga. 543, supra, and dismissed the bill of exceptions because two of the defendants against whom the judgment had been rendered were not parties to the bill of exceptions and "no judgment we might render could in any way disturb that verdict, so far as they are concerned." We began to "divide the indivisible" when, in *Thomas v. Barnett,* 107 Ga. App. 717 (131 SE2d 818) (cert. den.) we reversed as to one defendant, and in *Smith v. Barnett,* 107 Ga. App. 849 (132 SE2d 139) (cert. den.) affirmed as to another, each having filed a sep-

arate motion for new trial and having separately appealed from denials thereof. But the result was rectified in *Smith v. Barnett,* 109 Ga. App. 142 (135 SE2d 435) (cert. den.) where we held that as to the parties whose .appeal had resulted in an affirmance it was mandatory that the trial court grant a motion by them to vacate and set aside the judgment.

There were repeat performances in *Bracewell v. Bracewell,* 111 Ga. App. 759 (143 SE2d 10) (cert. den.) and *Couey v. Bracewell,* 111 Ga. App. 760 (143 SE2d 7) (cert. den.), and in *Mullis v. Chaika,* (also *Brown v. Chaika),* 118 Ga. App. 11, 22 (162 SE2d 448) where separate appeals by the defendants were considered together and we reversed as to one and affirmed as to the other. The posture in those cases was identical to that now before us—merit- was found in one appeal but not in the other. It was pointed out that the defendant in the appeal where the judgment was being affirmed could nevertheless obtain a new trial by application to the trial court.

Pragmatically it probably makes no difference whether we follow the doctrine of *Southeastern Truck Lines v. Rann,* 214 Ga. 813, supra, and of *Finley v. Southern R. Co.,* 5 Ga. App. 722 (3), supra, and hold that a reversal on the Smith-Whitaker appeal carries with it a setting aside of the judgment as to Knight, or again proceed with an esoteric division of the indivisible, affirming in the Knight appeal and reversing in the Smith-Whitaker appeal, but pointing out that it will, nevertheless, be mandatory that the trial court set the judgment aside as to all defendants upon appropriate motion after a return of the remittiturs. Cf. *Ga. Power Co. v. Rabun,* 111 Ga. App. 63, 71 (140 SE2d 568).

Every dictionary which we have consulted defines indivisible as that which is not capable of being separated or divided. A better definition of the word, as it refers to the judgment here, is hardly to be found than that in *Finley v. Southern R. Co.,* 5 Ga. App. 722 (3), supra, and we can see no difference in the meaning there expressed and that found in the expression of the Supreme Court in *Southeastern Truck Lines v. Rann,* 214 Ga. 813, supra. If, then, the judgment is indivisible, it must follow as night the day that our reversal of the Smith-Whitaker appeal results in a reversal

also on the Knight appeal.[3] In any event, the parties to both appeals are before this court and we should make a legal disposition of the matter. An attempt to divide the indivisible and shift to the trial court a portion of the responsibility for giving the coup de grace to the judgment is chimerical.

*Judgment reversed in both appeals. Hall, P. J., and Whitman, J., concur.*

---

[3]A more accurate way of stating the rule, perhaps, is that where the jury is authorized to find *joint liability* if a new trial is to be granted to one the indivisible character of the judgment requires that it be granted to all; but if there is a finding of *no liability* as to one defendant, a reversal as to him does not require a new trial as to others. In *Austin v. Appling,* 88 Ga. 54 (6) (13 SE 955) three defendants were sued in tort as partners. There was ample evidence to sustain the verdict as to one, but a total failure of proof of the existence of the partnership, hence of liability, as to the others. The judgment was affirmed as to the one and reversed with direction that the action be dismissed as to the others. In *Louisville & Nashville R. Co. v. Peeples,* 136 Ga. 448 (71 SE 805) the section boss and the railroad were joined as tortfeasors. The proof utterly failed to show that the section boss had acted within the scope of his employment, but there was ample proof of his wrongful action. The judgment was affirmed as to him but reversed as to the railroad. A similar result appears in *Western Union Telegraph Co. v. Owens,* 23 Ga. App. 169 (98 SE 116), where suit was brought against Western Union, Southern Bell Telephone, and Georgia Northern Railway as joint tortfeasors. The proof authorized a verdict against Western Union and Georgia Northern, but not against Southern Bell; it was not a joint tortfeasor. The same was true in *Greenfield v. Watson,* 54 Ga. App. 9 (187 SE 183), in *Gray v. Watson,* 54 Ga. App. 885 (189 SE 616), *Durden v. Maddox,* 73 Ga. App. 491, 493 (37 SE2d 219); and *Wrigley v. Nottingham,* 111 Ga. App. 404 (141 SE2d 859), reversed on other grounds in 221 Ga. 386 (144 SE2d 749). In *Adamson v. McEwen,* 12 Ga. App. 508 (77 SE 591) suit was brought against four people as joint tortfeasors to recover for the injuring of a mule by an automobile in which defendants were riding. The jury

---

found against three of them, and absolved one. The three jointly moved for a new trial. It was denied and on appeal it was held that the proof authorized the verdict as to one, who controlled the car, and as to another who operated the car as chauffeur, but that it demanded a finding that the third was a mere guest in the car against whom no liability could attach. There was an affirmance as to the two, but a reversal as to the guest.

In any event, however, the judgment is to be reversed as to all parties when the appellate court finds that "The whole case is so confused and interwoven, the legal with the illegal, that the only course open in order for all parties to have their day in court and their rights, whatever they are, adjudicated, is to reverse the judgment of the court below and order a new trial." *Brown v. Tomberlin,* 137 Ga. 596, 601 (73 SE 947).

The rule is different, of course, where from the nature of the action the judgment is severable, as for example, an action on a contract which is itself not entire in nature. *Chicago Bldg. &c. Co. v. Butler,* 139 Ga. 816, 819 (78 SE 244); *Crooker v. Hamilton,* 3 Ga. App. 190 (59 SE 722).