Mrs. David B. WALLACE, Sr., and
David B. Wallace, Sr.,
Plaintiffs-Appellants,

v.

William Dale ENER and T. M. Kellum
et al., Defendants-Appellees.

No. 75–1630
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1975.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Hugh G. Head, Jr., L. Burke Lewis, DeVillie, Levine & Lewis, Atlanta, Ga., for plaintiffs-appellants.

Clayton H. Farnham, Atlanta, Ga., for defendants-appellees.

Before BROWN, Chief Judge, and GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellants' son, David Wallace, Jr., was killed on the morning of June 8, 1973, when the motorcycle he was riding collided with the rear of a tractor-trailer which was stopped in the right lane of two east-bound traffic lanes of U. S. Highway 78, about five miles east of Tallapoosa, Georgia. Appellants brought this diversity action under the Georgia Wrongful Death Act, Ga.Code Ann. § 105–1301 et seq., alleging negligence against Ener, the driver of the tractor-trailer, Western Lines, Inc., his employer, and T. M. Kellum, the owner of the vehicle. A jury returned a verdict for the defendants-appellees, and this appeal followed. Appellants assign as error the District Court's failure to give various instructions to the jury and its exclusion of certain evidence. We find the appellants' contentions to be without merit and affirm.

The tractor-trailer, which was on an interstate haul, ran out of gas—the fuel gage was inoperative—about 4:00 a. m. and came to rest half way up a long, straight incline, about 500 feet beyond the point at which the normally two-lane highway adds a third lane for slower

east-bound vehicles. Appellee trucker, fearing the road shoulder might not be capable of supporting his heavy load, guided the vehicle to a stop in the right-most portion of the right lane. Appellee trucker testified that after setting out reflectors—but not red flags, which were never set out—he hitched a ride to a nearby gas station which did not have the necessary cans to sell him gasoline. He then called a second gas station which did have cans and which promised to send the gasoline out right away. When this gasoline did not arrive, appellee trucker walked back to the nearby gas station and called a third station which promised to send out gasoline. About 7:40 a. m. another trucker stopped just beyond the stopped vehicle to render assistance—no gasoline had yet arrived—and appellee trucker left his position behind his tractor-trailer to confer with the second trucker between their two vehicles. Traffic was heavier now, and several cars in the right lane had to stop before they could squeeze left around the tractor-trailer. The weather was dry and clear, the sun was bright and had been up for about two hours, and the trucker who stopped to give assistance testified that he had no problem noticing the stopped vehicle—appellees' expert testified that it was visible for at least 1000 feet. At 7:45 a. m. appellants' son, unseen by appellee trucker, struck the left rear section of the tractor-trailer on his motorcycle and was killed.

■ At the outset we are met by appellees' contention that appellants did not object to various jury instructions in compliance with F.R.Civ.P. 51[1] and thus should not be allowed to contest the propriety of these instructions on appeal. The record, however, shows that with regard to each of appellants' assignments of error, appellants either filed a written request to charge the jury or objected to the instruction in conference immediately following the charge to the jury and before the jury began its deliberations. In this regard, we agree with Professor Moore's view:

> The Rule [F.R.Civ.P. 51] does not require formality, and it is not important in what form an objection is made or even that a formal objection is made at all, as long as it is clear that the trial judge understood the party's position; the purpose of the Rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them.

5A Moore's Federal Practice ¶ 51.04 (2d Ed. 1948). *See Harlem Taxicab Ass'n v. Nemesh,* 1951, 89 U.S.App.D.C. 123, 191 F.2d 459. In this case, appellants' objections to several specific aspects of the instructions in the post-charge, pre-deliberation conference clearly satisfy F.R.Civ.P. 51. *St. Joe Paper Co. v. Hartford Accident & Indemnity Co.,* 5 Cir., 1967, 376 F.2d 33 (Petition for Further Rehearing); *Sharp v. Root,* 5 Cir., 1957, 240 F.2d 519; *cf. Buckley v. Valley Camp Coal Co.,* 4 Cir., 1963, 324 F.2d 244. Appellants' assignments of error in charging the jury which were not raised in conference were the subject of written requests to charge the jury which appellants had previously filed with the District Court and which the Court refused. Our review of these requests to charge and the authorities cited therewith satisfy us that they were sufficient to make appellants' position clear to the trial judge and to inform him of possible error in the instructions which he subse-

---

1. F.R.Civ.P. 51 provides:

   *INSTRUCTIONS TO JURY: OBJECTION*

   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

quently gave to the jury. *Delancey v. Motichek Towing Service, Inc.,* 5 Cir., 1970, 427 F.2d 897; *Williams v. Hennessey,* 5 Cir., 1964, 328 F.2d 490; *cf. Gradsky v. Sperry Rand Corp.,* 6 Cir., 1973, 489 F.2d 502. Thus, they were sufficient under F.R.Civ.P. 51 to preserve appellants' assignments of error.

One of appellants' theories of recovery was that appellees were negligent per se in that the tractor-trailer was stopped in violation of Ga.Code Ann. § 68–1670(a)(15), which prohibits anyone from stopping or parking any motor vehicle within 12 feet of the "center line" of a state highway. Appellants contend that the determination of the location of the center line is a matter of law and that the District Court erroneously left this determination up to the jury. Furthermore, appellants requested the District Court to instruct the jury that the center line for purposes of the statute is the intermittent white line dividing the two east-bound lanes rather than the double yellow lines dividing the west lane from the east-bound lanes. The District Court, however, simply instructed the jury in the words of the statute, making no comment on the legal location of the center line.[2]

■ The location of the center line in Georgia is a question of law which must not be left to the determination of the jury. *Smith v. Nelson,* 123 Ga.App. 712, 182 S.E.2d 332 (1971). Although the District Court could have been more specific, its reference to "the center line" left little doubt that it was referring to the traffic markings—double yellow lines—which divide west from east-bound traffic. The term "center line" naturally refers to these traffic markings. The District Court in no way invited the jury to determine that the center line could be other than the double yellow lines, as did the Court in *Smith v. Nelson, supra.*

■ In addition, the District Court correctly located the center line at the double yellow lines dividing traffic rather than at the intermittent white line dividing the two east-bound lanes. Under Georgia law, the center line of a road must be related to traffic lane markings. *Smith v. Nelson, supra.* In *Smith,* the center line was determined to be the solid white line which divided one south-bound lane from two north-bound lanes, rather than a line equidistant from the sides of the road. Appellants contend that the intermittent white line dividing the two east-bound lanes must be regarded as the center line in this case in order to avoid the "absurd result" of permitting parking in the outer east-bound lane under the statute. Appellants rely on *Pittman v. Staples,* 95 Ga.App. 187, 97 S.E.2d 630 (1957) in which the Court refused to place the center line at the middle of the median of a four-lane divided highway because this would have made the statute "an absurdity" and allowed one to "park a truck in the very center of the traveled portion of such road." *Id.* at 635. Appellants' reliance on *Pittman* is misplaced. There, to avoid *all* the absurdity of which it spoke, the Court could have located the center line at the intermittent white lines dividing the inner from the outer lanes, but it did not. Instead, it followed the traffic markings and located the center line where the median

2. The District Court's instructions were:

Now, the Code of the State of Georgia provides that it shall be unlawful for any person to stop or park any automobile, truck, tractor, trailer, or other motor vehicle, or horse-drawn vehicle, on or along any state-aid road or highway, unless such vehicle be placed so that it is at least 12 feet removed from the center line of such state-aid road or highway, and such vehicle shall be so parked that no portion thereof shall be within 12 feet of the center line of such state-aid road or highway.

Now, in connection with that law, I charge you that the fact that the vehicle was disabled and could be moved to some other place only by towing is a condition or fact to be considered, and, if that should be found to be the truth of the matter, a reasonable construction of the statute would excuse the operator of the disabled vehicle if it appeared that he had parked it as far from the center line as reasonably possible under the existing circumstances and proceeded with reasonable diligence to procure the *means of towing the vehicle away.* R. at 68–69.

met the inside lane, thereby leaving parking in the two outer lanes outside the reach of the statute (since the lanes here were approximately 10–12 feet wide).[3] We find no error under Georgia law in the District Court's placement of the legal center line in its jury instructions.

■ Appellants next contend that the District Court determined that the tractor-trailer was "disabled" rather than simply parked and instead should have left this determination for the jury, and that the District Court's instructions included an incorrect standard of what constitutes disablement excusing a violation of § 68–1670(a)(15). A careful reading of the record, set out in note 2, *supra*, clearly shows that the District Court properly left the question of whether the vehicle was legally disabled or not up to the jury. The portion of the quoted District Court's instruction regarding the exculpatory effect of disablement is taken verbatim from the opinion in *O'Pry v. Goodman*, 132 Ga.App. 191, 207 S.E.2d 674 (1974). We disagree with appellants' position that the language in *O'Pry*—indicating that a disabled vehicle need only park as far from the center line as reasonably possible under the existing circumstances (*Id.* at 677)—applies only where it is physically *impossible* to park more than 12 feet from the center line. Though this may have been the rule under the earlier case of *Kelly v. Locke*, 186 Ga. 620, 198 S.E. 754 (1938), cited by the *O'Pry* Court, the plain language in *O'Pry* can only be read as modifying that rule.

■ Appellants next challenge the District Court's failure to give instructions on three issues related to the question of appellants' son's own negligence. First, the District Court denied appellants' request to charge the jury that "one who may illegally and negligently place another person in danger is not entitled to the protection of the assumption that that other person will not be negligent." R. at 16. Appellants rely on *Northern Freight Lines, Inc. v. Southern Ry. Co.*, 108 Ga.App. 189, 132 S.E.2d 541 (1963). That case did require such a charge be given, but only because the Court had charged, for the other party, that one may assume that another will not act negligently. The Court's error was in that light alone. Here, the District Court gave no charge that the appellee trucker might assume that the decedent would act in a prudent manner, and the need for the corrective charge in *Northern Freight Lines* does not exist. The District Court correctly denied the requested charge.

■ Second, the District Court refused to charge the jury that it could not *infer* any negligence on the part of the decedent but would have to have evidence that the dead motorcyclist both actually saw and understood the danger presented by the stopped tractor-trailer. Appellants' request relied on *Williams v. United States*, 5 Cir., 1967, 379 F.2d 719, and the statute which it construes.[4] Both *Williams* and this Georgia statute, however, concern the negligence of a "child of tender years." The decedent was 20 years old—old enough to vote and to

---

**3.** The statute in question, Ga.Code Ann. § 68–1670(a)(15), has since been repealed, *see* Ga. Code Ann. § 68–1670 (1974 Supp.) and § 68A–1003 (1974 Supp.), leaving only § 68A–1001 (1974 Supp.) to regulate stopping, standing or parking on thoroughfares. The latter statute, as did its predecessor—§ 68–1668—provides, in part, that "in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles." Thus, it is not absurd that the purpose of now-repealed § 68–1670(a)(15) was similarly to keep at least one lane in each direction open for traffic rather than to prohibit all parking on roadways as appellants suggest.

**4.** Ga.Code Ann. § 105–204:
> "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation."

The question of decedent's negligence was thus governed by Ga.Code Ann. § 105–603:
> "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

serve in the armed forces—and was not a child within the meaning of *Williams* or the statute which it construes. The District Court was correct in refusing to give this charge.

■ Third, the District Court refused to amend its charge concerning the decedent's possible negligence under the "last clear chance" doctrine, contrary to appellants' request that the jury be instructed that the appellee trucker could also be found to have neglected his own "last clear chance" to avoid the accident. Appellants argue that, since the trucker either actually was or had a legal duty to be behind his truck to ward off vehicles which might negligently fail to avoid his truck, he had the last chance to avoid this accident by waving the dead motorcyclist off. The trucker's negligence—in parking too close to the center line, failing to take adequate precautions after stopping, or in running out of gas in the first place—was a question for the jury. A separate issue was the trucker's ability to avoid the accident after his own initial negligence and after decedent's assumed contributory negligence. There was uncontroverted evidence that the appellee trucker was in front of his truck at the time of the accident to discuss assistance from another trucker, and the appellee trucker's legal duty was not to remain behind his vehicle but to cause it to be removed from the roadway as soon as possible. *See* note 2, *supra*, and Ga.Code Ann. § 68–1668(b). This case is therefore distinguishable from *Bryant v. Hall*, 5 Cir., 1956, 238 F.2d 783, 788–89, where the defendant was under a statutory duty to watch for other travelers and to determine the safety of any turn. The District Court correctly withheld from the jury's determination whether the trucker actually "knew or should have known" of the deceased's "dangerous situation in sufficient time to avoid the collision." *Id.* at 789.

■ Appellants next contend that the District Court erroneously instructed the jury concerning appellees' duties under the Department of Transportation's Motor Carrier Safety Regulations, 49 CFR § 392.22 and § 393.95.[5] The regulations gave appellee trucker the option of carrying and placing either safety triangles, see § 393.95(f)(iv), or a set of red flags—for use during the day—and reflectors—for use at night. See § 393.-95(f)(iii). He testified that he carried a kit containing red flags and reflectors, but that he put out the reflectors only, neglecting to place the red flag when day broke. The District Court correctly instructed the jury that the regulations require—during daylight hours—that two red flags be placed on either side of the stopped vehicle, § 392.22(b)(2)(ii), and that a failure to put them out would be negligence per se. He further instructed that for any such per se negligence they would still have to find proximate cause. Appellee trucker was not required, as appellant argues, to carry or place safety triangles, since he carried the red flag/reflector kit. The District Court correctly refused appellants' further request to charge the jury as to the warning devices which appellee trucker might have been required to carry, since what appellee trucker's options were as to warning devices other than flags or triangles was not relevant. Whether appellee trucker was guilty of common law negligence, as appellants contend, for failing to carry and place safety triangles rather than reflectors or red flags—even though not required by the regulations—is another question, one which the District Court did submit to the jury. R. at 66.

5. § *392.22 Emergency signals: Stopped vehicles.*

(a) *Turn signals.* Whenever a motor vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped vehicle shall immediately flash the two front and two rear turn signals simultaneously as a vehicular traffic hazard warning and continue the flashing until he places the warning devices required by paragraph (b) of this section in use on the highways.

\* \* \* \* \* \*

(b) *Placement of warning devices*—(1) *General rule.* Except as provided in subpar-

**222**

■ Appellants' request that the jury be instructed as to punitive damages was also correctly refused by the District Court. Georgia law does not provide for punitive damages in a death case. *Western & Atlantic R. Co. v. Michael*, 175 Ga. 1, 165 S.E. 37 (1932); *Roescher v. Lehigh Acres Development Co., Inc.*, 125 Ga.App. 420, 188 S.E.2d 154 (1972). Any error in the District Court's instructions on measuring damages would be harmless in light of the jury's verdict on the issue of liability and our disposition of appellants' other assignments of error. 28 U.S.C.A. § 2111 and F.R.Civ.P. 61.

■ Appellants' final two assignments of error concern the District Court's refusal to admit into evidence the results of core borings of the road shoulder and the Georgia counterpart of the United States Department of Transportation's Motor Carrier Safety Regulations. The admissibility of evidence is within the sound discretion of the District Court, *Stancill v. McKenzie Tank Lines, Inc.*, 5 Cir., 1974, 497 F.2d 529; *Bailey v. Kawasaki-Kisen, K.K.*, 5 Cir., 1972, 455 F.2d 392, and even if error is found it must of course rise above the threshold of harmless error. The District Court was well within the limits of its discretion in excluding the results of core borings offered by appellants to demonstrate both the actual and apparent support capability of the road shoulder. The issue is not whether appellee trucker actually could have pulled off the road onto the shoulder without bogging down or turning over, but whether or not it *appeared* to a reasonable man under similar circumstances to be practical to do so. Though the actual composition of the road shoulder could have some bearing on the appearance of the surface of the shoulder, the District Court may reasonably have concluded this to be too fine a distinction for a jury to keep in mind.

■ The District Court also excluded the Georgia Public Service Commission Laws and Rules, issued Jan. 1, 1973, which adopt the Department of Transportation's Motor Carrier Safety Regulations, 49 CFR §§ 390–98 (which were admitted into evidence). Though the state and federal provisions are naturally identical, appellants argue that the state

agraph (2) of this paragraph, whenever a vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall as soon as possible, but in any event within 10 minutes, place the warning devices with which his vehicle is equipped in conformity with the requirements of § 393.95 of this subchapter, either three emergency reflective triangles, three electric emergency lanterns, three liquid-burning emergency flares, or three red emergency reflectors in the following manner:

(i) One at the traffic side of the stopped vehicle, within 10 feet of the front or rear of the vehicle;

(ii) One at a distance of approximately 100 feet from the stopped vehicle in the center of the traffic lane or shoulder occupied by the vehicle and in a direction toward traffic approaching in that lane; and

(iii) One at a distance of approximately 100 feet from the stopped vehicle in the center of the traffic lane or shoulder occupied by the vehicle and in the direction in which traffic in that lane is moving.

(2) *Special rules* —

\* \* \* \* \* \*

(ii) *Daylight hours.* Except as provided in subdivision (iii) of this subparagraph, during the period lighted lamps are not required, three emergency triangles shall be placed as specified in subparagraph (1) of this paragraph or two red flags as specified in subparagraph (1)(ii) and (iii) of this paragraph and within a time of 10 minutes.

§ 393.95 *Emergency equipment on all power units.*

On every bus, truck, truck-tractor, and every driven vehicle in driveaway-towaway operation, there shall be:

\* \* \* \* \* \*

(f) *Warning devices for stopped vehicles.* Except as provided in paragraph (g) of this section, one of the following combinations of warning devices:

(1) *Vehicles equipped with warning devices before January 1, 1974.* Warning devices specified below may be used until replacements are necessary:

\* \* \* \* \* \*

(iii) Three red emergency reflectors which satisfy the requirements of paragraph (i) of this section, and two red flags; or

(iv) Three red emergency reflective triangles which satisfy the requirements of paragraph (h) of this section;

\* \* \* \* \* \*

regulations were not preempted by the federal regulations and that a Georgia jury might well have been more disposed to premise negligence per se on a violation of regulations promulgated by the state of Georgia rather than the federal government. Assuming *arguendo* that the District Court abused its discretion in not admitting the Georgia regulations—the Georgia regulations were applicable to this interstate carrier by virtue of 49 CFR § 390.30 (federal regulations do not pre-empt compatible state regulations) and § 388 (providing for mutual enforcement by state and federal authorities of both state and federal regulations)—such error would not rise to the level of substantiality required by 28 U.S.C.A. § 2111 and F.R.Civ.P. 61. The state and federal regulations in this case are identical and therefore legally indistinguishable as a basis for negligence per se. Any greater psychological impact of the Georgia regulations upon the jury is not sufficient to cast their omission above the threshold of harmless error.

Affirmed.